CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. INGRAHAM.

Opinion delivered October 26, 1914.

1. CARRIERS—INTERSTATE COMMERCE COMMISSION RULES—NOTICE TO SHIPPERS.—All shippers are bound to a knowledge of tariff schedules on file with the Interstate Commerce Commission.

2. CARRIERS—INTERSTATE COMMERCE—CAR—SPECIAL TARIFF—DUTY OF SHIPPER—DAMAGES.—A railroad company will not be liable in damages to a shipper of live stock for failure to deliver a car of special design belonging to a foreign owner, when the shipper fails to comply with the printed tariff schedule filed by the owner of the car with the Interstate Commerce Commission.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon*, Judge; reversed.

*Thos. S. Buzbee* and *Geo B. Pugh,* for appellants.

1. Johnson, the soliciting freight agent for the Frisco railroad, had no authority to enter into any such contract as is alleged by appellee; but even if he had made the contract alleged, it would not have been binding. He had no authority to make a contract contrary to the provisions of the tariff. 106 Ark. 237; 100 Ark. 22; Barnes on Interstate Transportation, § 446.

2. Appellant's agent not only had the legal right but it was his duty, to refuse to deliver the car at Oklahoma City without the production of the written contract of the Arms Palace Horse Car Company.

3.    The evidence is wholly insufficient to show that the death of the horse resulted from the failure of the appellee to obtain the palace car for him to ride in.

4.    The death of the horse was not the proximate result of the refusal of appellant to deliver the car to appellee.    If appellee was entitled to the car and appellant wrongfully refused to deliver it, the latter would be liable only for damages resulting from the delay incident to procuring another car.    66 Ark. 68; 87 Ark. 576; 101 Ark. 90; 41 L. R. A. 794; 75 Am. St. Rep. 685.

*John D. Arbuckle* and *C. A. Starbird,* for appellee.

1.    Johnson testified that he was authorized to make the contract for the A. P. H. Car Company, and the jury's verdict settles this point contrary to appellant's contention.

2.    Appellee and the A. P. H. Car Company made their own contract.    Appellant, a third party, could not set aside that contract.    It had done its part, so far as the collection of tariff charges was concerned, and any further collection for the use of the car was a question for the M., K. & T. Ry. Co. to dispose of.

3.    The allegation in the complaint "that on account of or in consequence of bad ventilation and exposure in said (box) car said horse sickened and died," was not specifically controverted in the answer, and must be taken as true.    Kirby's Dig., § 6137.    Not only so, but it was also the opinion of two expert witnesses.    83 Ark. 584.

4.    The direct injury resulting from appellant's act in taking away the safety appliance, *i. e.,* the A. P. H. car, which appellee at great expense had provided, was the exposure, sickness and death of the horse.    The loss is the proximate result of appellant's refusal to deliver the car.    83 Ark. 584; 64 L. R. A. 545.

McCULLOCH, C. J.    The plaintiff, L. H. Ingraham, is a farmer and stock raiser in Sebastian County, Arkansas.    He owns fine horses which he exhibits at fairs.    In September, 1912, he shipped nine horses from Fort Smith

to Oklahoma City, Oklahoma, over the St. Louis & San Francisco Railroad to Wister, thence over the Chicago, Rock Island & Pacific Railway to destination, for the purpose of exhibiting his stock at the fair at Oklahoma City, and he remained there with his stock during the progress of the fair, a period of two weeks. He then shipped the horses from Oklahoma City to Muskogee, to exhibit at the fair there, and at the end of the week shipped them back to Fort Smith. One of his horses, a very fine one, which is shown to be of the value of at least six hundred dollars, was found to be sick after the stock reached Muskogee and continued ailing until it died a few days after reaching Fort Smith. Before the horse died, it was found that the ailment was pulmonary pneumonia, and the plaintiff asserts and undertook to prove that the disease was contracted by reason of change from the well ventilated car, especially designed for the shipment of livestock, which was used in the shipment from Fort Smith to Oklahoma City, to a common box car which plaintiff was compelled to use in shipment from Oklahoma City to Muskogee. The car which was used in the shipment from Fort Smith remained in the hands of the defendant company and the latter's agent at Oklahoma City refused to surrender the car for plaintiff's use in shipping the stock to Muskogee over the line of the M., K & T. Ry. Co.

The plaintiff predicates his right to recover from defendant the value of the horse on the latter's refusal to surrender the car to another carrier. The car was one furnished by a corporation domiciled at Chicago, known as the Arms Palace Horse Car Company. That company furnished cars to shippers of livestock upon regular tariff rates, a schedule of which rates had been filed by the company with the Interstate Commerce Commission. The shipper is required to pay for the use of the car in addition to the freight tariff charged by the railroad company, but the railroad company usually procured the car from the Arms Palace Horse Car Company upon the

request of the shipper.    Usually time is required for the
carrier to procure the palace horse car.    On this occa-
sion, plaintiff applied to the soliciting freight agent of
the Frisco Railroad at Fort Smith for one of the palace
stock cars, and the latter undertook to procure it for him
in time for shipment on September 17.    Plaintiff claims
that the agent of the Frisco entered into an oral agree-
ment with him to furnish the car for the trip from Fort
Smith to Oklahoma City, thence to Muskogee, and thence
back to Fort Smith, and that plaintiff was to have the use
of the car thirty days for payment at the rate of $16 in ad-
dition to the regular freight tariff.    The Frisco agent
wired to the headquarters of the Arms Palace Horse Car
Company, and, in accordance with the request, a car was
furnished in which to ship plaintiff's stock.    When he
applied to the proper agent of the Frisco to ship his
stock, a bill of lading was issued to him in regular form
showing a consignment of the nine horses from Fort
Smith to Wister Junction over that road, and thence over
the Chicago, Rock Island & Pacific Railway to Oklahoma
City.    The bill of lading recited the railroad freight tariff
and also the $16 to be paid for the use of the palace
horse car.

The tariff sheets of the palace horse car company on
file with the Interstate Commerce Commission show the
regular tariff rate of $16 for a continuous trip of four
hundred miles and provide that all of the rates pre-
scribed in the schedule were payable to the initial car-
rier.    The schedule contains the following provision:
"These tariff rental charges do not apply on any Arms
car leased by contract in writing, signed by the Arms
Palace Horse Car Company, and submitted by lessee to
the railroad company agent when loading car, as evi-
dence of his right to unconditional and exclusive use of
car during the time specified in contract, and for making
any necessary notation with reference thereto on the
billing."

When the car reached Oklahoma City, the horses
were delivered to plaintiff in good condition and the car

was stored on a spur of defendant company where other cars of that kind were stored. Plaintiff remained there two weeks exhibiting his stock and decided to ship to Muskogee over the M., K. & T. railroad line. Plaintiff applied to the car clerk of defendant company at Oklahoma City for release of this car, but the clerk declined to release the car unless a contract in writing with the Arms Palace Horse Car Company was exhibited in accordance with the printed schedule. It was too late then for the M., K. & T. railroad to get a car of this description in time for plaintiff to ship his stock for exhibition at the fair at Muskogee and plaintiff decided to ship in an ordinary box car, in which he prepared temporary stalls.

(1-2) We need not discuss the question, so earnestly presented by counsel, whether or not the damages alleged were the proximate cause of the refusal to release the car, for we are of the opinion that no actionable wrong or breach of contract on the part of defendant is established. The tariff schedules of the Arms Palace Horse Car Company were on file with the Interstate Commerce Commission, and all shippers who obtain the use of those cars are bound by the provisions therein contained. *B. & M. R. R.* v. *Hooker,* 233 U. S. 97. The printed schedule provides for a tariff rate of $16 for not exceeding four hundred miles of continuous trip. The continuous trip in this instance ended at Oklahoma City, and therefore a reshipment at Oklahoma City would not come within the printed tariff lists. In order to secure any rates other than those specified for a continuous trip, it was necessary for a shipper to procure a written contract with the Arms Palace Horse Car Company, and it is not contended in this case that the plaintiff procured any such contract. The defendant company, as the delivering carrier, had fully discharged its duty to plaintiff under the contract by delivering the stock at Oklahoma City, the point of destination. It was not bound to release the car to plaintiff, or to any other railroad company, except upon the order of the Arms Palace Horse Car Company.

ARK.]   CHICAGO, R. I. & P. RY. Co. v. INGRAHAM.  ·  511

It is a mistake to assume, as is done by counsel for the plaintiff, that defendant company was not a party to the plaintiff's alleged contract for the use of the car and that it therefore had no right to dispute plaintiff's right to take the car for a reshipment. The defendant took possession of the car under the printed tariff rates of the owner and was bound to observe them. It had the right to hold the car until proper authority was given for its release. Plaintiff does not contend that he had any written contract with the horse car campany; he asserts the right to the car solely upon an oral contract with the agent of the Frisco railroad at Fort Smith. Now, that agent is not shown to have been authorized to enter into an oral contract for the lease of the car further than that specified in the printed schedule. Counsel insist that the evidence of the Fort Smith agent showed that he was authorized by the car company to enter into this contract, but an examination of his testimony shows to the contrary. He states, it is true, that he was authorized by the Arms Palace Horse Car Company to enter into the contract with plaintiff; that is to say, the contract in accordance with the printed schedule, which he says he construed to mean that the shipper could have the use of the car for shipment a distance of four hundred miles. The witness did not testify and it nowhere appears that the agent of the Frisco at Fort Smith had any special authority from the horse car company, or any authority at all, to enter into a contract except such as is prescribed in the printed schedule for a continuous shipment. But even if there had been any special authority conferred, it is not shown that the same was brought to the attention of the defendant's agent at Oklahoma City; and the latter refused to release the car, as he had a right to do, on the ground that the continuous shipment was ended and that no special contract in writing was exhibited as provided by the schedule.

Our conclusion is that the defendant was within its rights in refusing to release the car. The fact, as claimed by plaintiff, that the motive of defendant's agent in refus-

ing to surrender the car was bad, in attempting thus to force the plaintiff to reship to Muskogee over defendant's line, does not render the defendant liable where it is not legally bound to release the car.   Therefore, according to the undisputed evidence in the case, there is no liability.

The judgment is reversed and the cause dismissed.